UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHEE SUM NG,

         Plaintiff,       **COMPLAINT**

   -against-

                    16-Civ. -13
KING HENRY REALTY INC., WONG TUNG,
and POON LUT MEI,

         Defendants.
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1. Plaintiff CHEE SUM NG ("Mr. Ng") seeks injunctive and declaratory relief to protect his right to accessible living space during the planned replacement of the sole elevator in his seven-story building.

2. Mr. Ng is a 64-year-old rent-stabilized tenant at 173 Henry Street, Apartment 7F, New York, NY 10002 ("173 Henry Street") who cannot safely or reasonably climb the seven flights of stairs to his apartment because he suffers from End Stage Renal Disease. Mr. Ng's disability affects his ability to breathe and has weakened his body such that he lacks the lower body strength to ascend or descend stairs independently.

3. Mr. Ng must leave his apartment at least three to four times per week for life-saving dialysis treatment at his primary care doctor's office. In fact, when the elevator service temporarily and abruptly stopped several weeks ago, Mr. Ng was forced to take the stairs to get to dialysis treatment and fell down the stairs, sustaining multiple injuries.

4. Defendants, who are the owners and parties responsible for the building, intend to take the elevator out of service on January 4, 2016 for an estimated period of five months, effectively trapping Mr. Ng in his home.

5. Defendants have refused to offer or agree to any reasonable accommodations or to provide Mr. Ng with an alternate, accessible apartment.

6. By failing to provide access to his apartment, common areas, and other facilities within the premises, and failing to offer any reasonable accommodations, Defendants have violated Mr. Ng's rights under the Fair Housing Act, the New York State and New York City Human Rights Laws, and the regulations promulgated thereunder.

## JURISDICTION AND VENUE

7. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States, 28 U.S.C. § 1343 for actions under laws providing for the protection of civil rights, and 28 U.S.C. § 1367 for related state and local claims.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b). The Southern District of New York is the judicial district in which Defendants do business at their executive office located at 173 Henry Street, Apartment 4E, New York, NY 10002 according to the Multiple Dwelling Registration filed with the New York City Department of Housing Preservation and Development ("HPD").

## PARTIES

9. Plaintiff CHEE SUM NG is a disabled, mobility-impaired, 64-year-old tenant who has lived at 173 Henry Street, Apartment 7F, New York, NY 10002 for approximately 43 years.

10. Mr. Ng lives with his wife and does not have a home health aide.

11. Mr. Ng's sole income is derived from a fixed disability benefit which must cover his medical treatment.

12. Mr. Ng suffers from End Stage Renal Disease. He is at the last stage of his chronic kidney disease such that he cannot live without either a kidney transplant or frequent dialysis treatment at least three to four times per week.

13. As a result of his kidney disease and frequent dialysis treatments, Mr. Ng's body is physically very weak. His legs are constantly swollen which causes extreme difficulty for him to walk short distances, even on flat surfaces. He uses a walker to help support himself.

14. Mr. Ng's End Stage Renal Disease causes his lungs to suddenly fill with fluid, which greatly affects his ability to breathe. Coupled with his weakened lower body strength, Mr. Ng cannot walk short distances without having to frequently stop and rest to breathe.

15. Although Mr. Ng has limited income, he needs to pay for a taxi to go to his doctor's office for his frequent dialysis treatments because he does not have the strength to walk there by himself.

16. Mr. Ng cannot safely ascend or descend seven flights of stairs from his apartment without the risk of falling. In fact, when Mr. Ng attempted to descend the stairs to receive dialysis treatment several weeks ago due to a sudden stoppage of elevator service, he fell down the stairs after walking down only one flight. He sustained injuries including bruises on his

forehead and nose, a blackened right eye, injuries to his right hand, and a bloody nose.

17. Nonetheless, even after his fall, Mr. Ng was forced to slowly continue to descend the stairs so that he could receive his life-saving dialysis treatment. He slowly walked down the stairs, stopping at each floor to rest and catch his breath, until he reached the lobby after 40 minutes. He required 60 minutes to ascend the stairs after receiving strenuous dialysis treatments.

18. Mr. Ng also visits Israel and Leah Cummings Recreation Center approximately once or twice per week to eat breakfast and socialize with other seniors.

19. If Defendants remove the elevator from service, Mr. Ng's apartment will not be accessible to him and he will not be able to receive his life-saving dialysis treatments.

20. Upon information and belief, Defendant KING HENRY REALTY INC. ("Defendant King Henry Realty") is the deed owner of the property known as 173 Henry Street. It maintains its Principal Executive Office at 7 Monroe Street, Apartment 1, New York, NY 10002 as registered with the New York State Department of State, and/or 173 Henry Street, Apartment 4E, New York, NY 10002 as registered with HPD in its Multiple Dwelling Registration.

21. Defendant POON LUT MEI ("Defendant Mei") is the Head Officer and Managing Agent of the property according to the Multiple Dwelling Registration filed with HPD. According to the registration information, Defendant Mei maintains an address at 173 Henry Street, Apartment 4E, New York, NY 10002.

22. Defendant WONG TUNG ("Defendant Tung") is an Officer of Defendant King Henry Realty according to the Multiple Dwelling Registration filed with HPD. According to the registration information, Defendant Tung maintains an office at 173 Henry Street, Apartment 4E,

New York, NY 10002.

## STATUTORY AND REGULATORY SCHEME

### Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988

23.     Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act (hereinafter "FHA"), as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHAA"), 42 U.S.C. § 3601 *et seq.*, states that "it shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of-- (A) that person; or . . . (C) any person associated with that person." 42 U.S.C. § 3604 (f)(2).

24.     A person is defined as "handicapped" if she has "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602 (h)(1); *see* 24 C.F.R. § 100.201. "Major life activities" are functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b).

25.     Federal regulations implementing this Act require the dwelling unit to be accessible by the handicapped persons so as to allow them use and enjoyment of all parts of the building, including public and common use areas. *See* 24 C.F.R. § 100.65(b)(4) and § 100.204.

26.     A dwelling unit is "accessible" with respect to the common and public use areas when these areas can be "approached, entered, and used by individuals with physical disabilities." 24 C.F.R. § 100.201.

27.     "Common use areas" are those rooms, spaces, or elements located inside or outside the building that are available to residents and their guests to use and enjoy. 24 C.F.R.

5

§ 100.201. "Public use areas" are those rooms and spaces located inside or outside the building that are "available to the general public." 24 C.F.R. § 100.201.

### New York State Human Rights Law

28. The New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 290 *et seq.* provides, in pertinent part, that:

> (i) It shall be unlawful discriminatory practice for the owner, . . . or managing agent of . . . a housing accommodation . . . or any agent or employee thereof:
>
> . . .
>
> (ii) (2) To discriminate against any person because of . . . disability . . . in the terms, conditions or privileges of sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services on connection therewith.

N.Y. Exec. Law § 296(5).

29. The State HRL also provides that:

> It shall be an unlawful discriminatory practice for the owner . . . or managing agent of . . . housing accommodations . . . [t]o refuse to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling . . .

N.Y. Exec. Law § 296 (18)(2).

30. Under the State HRL, the term "disability" is defined as:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, or (b) a record of such impairment or (c) a condition regarded by others as such an impairment . . .

N.Y. Exec. Law § 292(21).

31. The State HRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied . . . as the home, residence or sleeping place of one or more human beings." N.Y. Exec. Law § 292(10).

### The New York City Human Rights Law

32. The New York City Human Rights Law ("City HRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, affords protection against discrimination in housing to disabled individuals.

33. The City HRL provides, in relevant part:

> (a) It shall be unlawful discriminatory practice for the owner . . . or managing agent of . . . a housing accommodation, constructed or to be constructed, or any agent or employee thereof:
>
> . . .
>
> (2) To discriminate against any person because of such person's actual or perceived . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation . . . or in the furnishing of facilities or services in connection therewith.

N.Y.C. Admin. Code § 8-107(5).

34. The City HRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings." N.Y.C. Admin. Code § 8-102(10). The City HRL defines "physical, medical, mental or psychological impairment" in the following manner:

> (1) An impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the

7

hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or

(2) A mental or psychological impairment.

N.Y.C. Admin. Code § 8-102 (16)(b).

### The New York City Building Code

35. The New York City Building Code, codified in Titles 27 and 28 of the New York City Administrative Code, applies to the "construction, alteration, movement, addition, replacement, repair, equipment, use and occupancy, location, maintenance, removal and demolition of every building or structure." N.Y.C. Admin. Code § 28-701.2C1.

36. The Building Code was enacted "to provide reasonable minimum requirements and standards . . . for the regulation of building construction in the City of New York in the interest of public safety, health, welfare and the environment, and with due regard for building construction and maintenance costs." N.Y.C. Admin. Code § 28-101.2.

37. Comprehensive in scope, the Building Code incorporates and applies the provisions of the New York City Fire Code to "[e]mergency preparedness and planning, including the orderly evacuation of occupants of a building, structure or premises in the event of fire, explosion, biological, chemical or hazardous material incident or release, natural disaster or other emergency, or the threat thereof." N.Y.C. Admin. Code § 28-701.2C1.

38. Pursuant to Section 105.2 of the Building Code, a building owner must receive a permit prior to altering or repairing a mechanical system. N.Y.C. Admin. Code § 28-105.1. Chapter 2 of the Building Code establishes a penalty of no less than five thousand dollars ($5,000.00) for performing work without a permit issued by the Department of Buildings. N.Y.C. Admin. Code § 28-213.1.2.

39. Chapter 1, Subchapter 4 of the Building Code sets forth various "Building Limitations" on property owners, including certain requirements pertaining to building access for those with disabilities, contained in Article 2. Section 27-292 establishes that, "buildings shall be provided with accessible routes, usable or adaptable space and accessible elements and facilities to make buildings accessible and usable by, and to establish a safe environment for, all categories of people having physical disabilities." N.Y.C. Admin. Code § 27-292.1.

40. Article 2 explicitly states that the provisions "shall be supplemental to and take precedence over" other less restrictive code sections, including means of egress and building access, otherwise contained at N.Y.C. Admin. Code § 27-357(d). N.Y.C. Admin. Code § 27-292.4(b)(2).

41. Expanding on building access for those with disabilities, the Code provides that "primary entrance(s) for buildings shall be accessible." N.Y.C. Admin. Code § 27-292.5(a).

42. Crucially, "[t]he path of travel in exterior and interior accessible routes shall provide unobstructed safe access." N.Y.C. Admin. Code § 27-292.5(d).

43. The Building Code also specifically addresses interior accessibility for disabled persons from entrances to areas including but not limited to laundry rooms, refuse disposal locations, and mailbox areas, among others. N.Y.C. Admin. Code § 27-292.5(c).

## STATEMENT OF FACTS

44. The premises at 173 Henry Street is a seven-story multiple dwelling rent-stabilized building with 43 apartments, some of which are occupied by low-income tenants who are elderly and/or have disabilities.

45. Defendants intend to replace the sole elevator in the building on January 4, 2016, a process that purports to remove the elevator from operation for a period of approximately five months.

46. On or about December 20, 2015, the Landlord Defendants issued a notice to the tenants of 173 Henry Street, advising them of the planned elevator shut-down. However, the notice and copy of the Department of Buildings elevator permit dated May 27, 2014 were not posted on every floor of the seven-story building. The notice was only posted on walls on the basement and fifth through seventh floors. The notice stated in English and Chinese, "Due to system upgrade elevator will be shut off for five months starting on 01/04/2016."

47. The December 20, 2015 notice neither advised the tenants that they could contact the owner nor offered any accommodations for those with disabilities.

48. On or about December 23, 2015, Defendants held a meeting with a select number of tenants to discuss the elevator service stoppage issue. At this meeting, the tenants requested that Defendants postpone the removal of elevator service to ensure a reasonable accommodation could be agreed upon between the parties.

49. The tenants told Defendant Tung that Defendants had failed to provide proper notice to all tenants in the building. Furthermore, the tenants advised Defendant Tung that there are many elderly tenants and tenants with disabilities living in the building who would not be able to leave the building without elevator services.

50. Despite being notified that there are disabled and vulnerable tenants at 173 Henry Street who require elevator service, Defendants failed to offer reasonable accommodations. Instead, Defendant Tung insisted that the elevator service stoppage would not be postponed because Defendants had paid a substantial deposit to the contractors.

51. Therefore, it is irrefutable that Defendants had notice that elderly and disabled tenants reside at 173 Henry Street and need reasonable accommodations.

52. Upon information and belief, on December 28, 2015, Senator Daniel Squadron's office called Defendant Mei, requesting accommodations for the disabled tenants at 173 Henry Street.

53. Upon information and belief, Defendant Mei responded that she did not have authority to grant such accommodations.

54. Upon information and belief, on December 30, 2015, City Council Member Margaret Chin's office contacted and requested Defendants to provide accommodations for the disabled tenants at 173 Henry Street and postpone the January 4, 2016 elevator shut-down, given the importance of Lunar New Year to the Chinese tenants. Lunar New Year will take place in early February, 2016.

55. Upon information and belief, Defendants have not agreed to ensure reasonable accommodations to the tenants with disabilities although they have verbally agreed to consider postponing the elevator service shut-down date.

56. Upon information and belief, Defendants have not taken any appropriate steps to provide, maintain, or modify services in preparation for or execution of the elevator replacement.

57. Moreover, Defendants have failed to ensure that Mr. Ng and other vulnerable tenants will have access to internal building services or egress during the term of the elevator replacement.

58. Mr. Ng suffers from End Stage Renal Disease, which affects his ability to breathe and has weakened his body such that he does not have the lower body strength to ascend or descend stairs independently.

59. Mr. Ng has great difficulty walking even on flat surfaces because his kidney disease has weakened his body. He relies on a walker to support himself.

60. Mr. Ng's swollen legs and frequent fluid buildup in his lungs affect his breathing such that he cannot walk even short distances without great difficulty.

61. When the elevator services were abruptly stopped several weeks ago, Mr. Ng was forced to take the stairs down seven flights to receive his life-saving dialysis treatment and fell down the stairs, sustaining multiple injuries.

62. When Mr. Ng's lungs are filled with fluid, he needs to immediately visit his primary care doctor to receive dialysis treatments; otherwise, his life would be seriously threatened. These dialysis treatments are required around three to four times per week.

63. Mr. Ng survives on a fixed disability benefit. Despite his limited income, Mr. Ng relies on taxi cab services to visit his primary care doctor for dialysis treatments because he does not have the strength to walk to his doctor's office.

64. Without elevator service, Mr. Ng's life would be in grave danger because he will not be able to descend from the top floor of his seven story building to receive critical dialysis treatments which he needs to live.

65. In the event of a medical emergency, Mr. Ng will not be able to vacate the premises.

66. Furthermore, Mr. Ng enjoys visiting the Israel and Leah Cummings Recreation Center around once or twice per week to eat breakfast and socialize with others.

67. Mr. Ng does not have an alternative place that he can temporarily live at while the elevator is out of service. He does not have any relatives who can provide temporary accommodations for him.

68. Mr. Ng's current monthly rent is $670.00 per month. He receives an annual disability benefit income of $31,255.00, which pays for his medical and dialysis treatments and transportation to receive the same. Accordingly, Mr. Ng cannot afford to move elsewhere.

69. Mr. Ng, through his attorneys, requested that Defendants provide reasonable accommodation to him. However, he has not received any response as to whether Defendants will provide such an accommodation.

70. As a reasonable accommodation, Ms. Ng would gladly accept temporary lodging on any floor of a nearby building with a working elevator, or a first floor apartment in his building.

## CAUSES OF ACTION

### First Cause of Action: Violations of Title VIII of the Civil Rights Act of 1968

71. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

72. Plaintiff is disabled and/or a handicapped person within the meaning of Title VIII of the Civil Rights Act.

73. Defendants' refusal to make reasonable accommodation for Plaintiff prior to removing the elevator from service as planned at 173 Henry Street, constitutes discrimination against Plaintiff on the basis of his disability in the provision of services or facilities in connection with Plaintiff's dwelling, in violation of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*

74. If the elevator is removed from service as planned at 173 Henry Street, Plaintiff will be harmed by Defendants' violations of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988.

### Second Cause of Action: Violations of New York State Human Rights Law

75. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

76. Plaintiff is disabled and/or a handicapped person within the meaning of the New York State Human Rights Law.

77. Defendants' refusal to make reasonable accommodation for Plaintiff prior to removing the elevator from service as planned at 173 Henry Street, constitutes discrimination against Plaintiff on the basis of his disability in the provision of services or facilities in connection with Plaintiff's dwelling in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

78. If the elevator is removed from service as planned at 173 Henry Street, Plaintiff will be harmed by Defendants' violations of the New York State Human Rights Law.

### Third Cause of Action: Violations of New York City Human Rights Law

79. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

80. Plaintiff is disabled and/or a handicapped person within the meaning of the New York City Human Rights Law.

81. Defendants' refusal to make reasonable accommodation for Plaintiff prior to removing the elevator from service as planned at 173 Henry Street, constitutes discrimination against Plaintiff on the basis of his disability in the provision of services or facilities in connection with Plaintiff's dwelling in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*

82. If the elevator is removed from service as planned at 173 Henry Street, Plaintiff will be harmed by Defendants' violations of the New York City Human Rights Law.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court:

(1) Enter a final judgment declaring that Defendants violated:

    a. Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*, and its implementing regulations;

    b. New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and its implementing regulations; and

    c. New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, and its implementing regulations;

(2) Enter final injunctive relief requiring Defendants to immediately cease and desist from removing the elevator at 173 Henry Street from service until reasonable accommodations have been made to provide accessible accommodations to Plaintiff;

(3) Enter a final judgment awarding Plaintiff actual, compensatory, punitive, and nominal damages for injuries and expenses incurred as a result of the preceding violations;

(4) Allow Plaintiff reasonable attorney's fees, costs and disbursements pursuant to 29 U.S.C. § 794(a) and 42 U.S.C. § 1988; and

(5) Grant such other and further relief as this Court may deem just and proper.

Dated: New York, New York
January 4, 2016

Respectfully submitted,

MANHATTAN LEGAL SERVICES
ANITA WU, ESQ., (AW 1287)
CYNTHIA WEAVER, ESQ., (CL 1399)
ROSALIND BLACK, ESQ., (RB 7088)
1 West 125th Street, 2nd Floor
New York, NY 10027
Attorneys for Plaintiff
(646) 442-3100

By: _____
ANITA WU (AW 1287)

By: _____
CYNTHIA WEAVER (CL 1399)

ASIAN AMERICANS FOR EQUALITY
JONATHAN HERNANDEZ, ESQ. (JH 0389)
111 Division Street
New York, NY 10002
Attorneys for Plaintiff
(718) 316-9993

By: _____
JONATHAN HERNANDEZ, ESQ. (JH 0389)